## Case No. 15,904.

### UNITED STATES v. NUTT.

[6 Am. Law Rec. 302; 23 Int. Rev. Rec. 386; 10 Chi. Leg. News, 60; 1 Month. Jur. 499; 2 Cin. Law Bul. 263, 269.] 1

District Court, N. D. Ohio. Oct. Term, 1877.

OFFENSES AGAINST POSTAL LAWS—APPROPRIATING ANOTHER'S LETTERS—INTENT—DEFENSES.

1. On an indictment under section 3892 of the Revised Statutes, for taking a letter from a post-office with intent to obstruct correspondence, the defendant may be convicted without evidence of an unlawful, clandestine or fraudulent taking.

2. In such case "correspondence" may be "obstructed" within the statute by an intentional non-delivery of the letter so taken from a post-office.

3. A party indicted for such taking of a letter with intent "to pry into the business or secrets of another," can not be convicted, if he knew the contents of the letter before he received it.

4. It is no defense for a party indicted for such taking of a letter that it related in part to his business, or business in which he was interested.

5. In such case it is no defense that the accused, in good faith, believed that the letter was of no value to the person to whom it was addressed, even if such be the fact.

6. The writer of a letter, which has passed from the office where mailed, has no right to intercept it, or authorize its delivery to a person other than the one to whom it is directed. [Quoted in United States v. McCready, 11 Fed. 231.]

7. It is no defense that the letter was voluntarily delivered to the defendant by the postmaster.

The indictment is under section 3892 of the Revised Statutes, and charges that in said district, defendant, on April 11, 1877, "did unlawfully take a certain letter, then and there directed to one Isaac Baughman, Quincy, Ohio, from the post-office at Quincy, in said district, the said letter not then and there containing any article of value, and before the same had been delivered to the person to whom it was as aforesaid directed, with a design then and there to obstruct the correspondence, and to pry into the business and secrets of another, contrary to the form of the statute," etc.

Wm. Lawrence and Wm. B. Neff, for defendant, moved to quash the indictment because the count contained three misdemeanors; did not allege that the letter was ever in the mail or care of a post-master, and did not aver whose business or secrets defendant intended to pry into. Whart. Prec. Ind. 1099; U. S. v. Mulvaney [Case No. 15,833]; U. S. v. Sander [Id. 16,219].

J. C. Lee, U. S. Dist. Atty., entered a nolle.

The grand jury immediately reported another indictment, substantially in the same form, containing three counts, one charging

1 [10 Chi. Leg. News, 60, and 2 Cin. Law Bul. 269, contain condensed reports.]

an intent to obstruct the correspondence of Baughman; and a second charging intent to pry into business of Baughman; and a third, an intent to pry into the secrets of Baughman.

The case was tried to a jury. There was evidence tending to show that John M. Nutt, of Sidney, and Wm. A. Nutt, of Quincy, were partners as Nutt Brothers, having a warehouse, and dealing in grain at Quincy; that in June, 1876, Baughman stored 500 bushels of wheat at the warehouse, to be kept until he should elect to sell it; that in March, 1877, Baughman requested Wm. A. Nutt to inform him when the price reached $1.50 per bushel, and said that he would then sell; that on the 9th of April, John M. Nutt sent in the mail from Sidney a letter to Baughman at Quincy, signed "Nutt Brothers," offering $1.50 per bushel, and requesting Baughman to let them know; that on the 10th of April, Wm. A. Nutt went to Sidney, where John M. Nutt informed him the letter had been sent, told him its contents, and gave him a written order, signed "Nutt Brothers," to the post-master at Quincy, to deliver the letter to Wm. A. Nutt, who returned to Quincy, and on the 11th of April asked and obtained from the post-master the letter to take to Baughman, and left the order with the post-master; that on the 11th of April he took the letter two miles, to Baughman's farm, where he offered the letter to Baughman (though Baughman denies that it was so offered), and Nutt then offered to buy his wheat at $1.50; that Baughman declined to receive the letter, saying the writing of a letter would not sell his wheat; that during the interview it was agreed that Nutt Brothers should have the wheat at $1.52 per bushel; that on the 13th of April, Baughman got some mail matter from the post-master at Quincy, who informed him that he had given the letter to Nutt; that Baughman, having learned that wheat had advanced in price, had some controversy with Wm. A. Nutt as to the sale, and the cost of storage, and asked Nutt about the letter, when Nutt replied. "Oh, I forgot;" and, taking a package of about a dozen letters from his pocket, offered the letter to Baughman, who, observing that it had been opened, declined to take it. Nutt proved an unblemished reputation.

Wm. Lawrence, and for defendant on the trial, objected to the evidence that a letter was sent in the mail, because the indictment did not aver that it had been in the mail or in the care of a post-master.

WELKER, District Judge, overruled the objection because it was alleged in the indictment that the letter was "taken from the post-office," being a substantial following of the words of the statute.

Wm. Lawrence, in the argument, made the following questions of law to the court:

(1) If the post-master voluntarily and without any fraud of Nutt delivered the letter to him, this is not a "taking" within the statute. To "take" "from a post-office" is one thing—to receive from a post-master is very different. The word "take" is copied from section 22 of the post-office act of March 3, 1825 [4 Stat. 108], by which it is made an offense to "take a letter from a post-office," and another offense to take with intent to destroy, and another to take with intent to obstruct correspondence or pry into business. But in all the taking must be clandestine or fraudulent. The law now in force is copied from this, and must receive the same construction. All doubt is to be resolved for defendant in construing the statute. U. S. v. Pearce [Case No. 16,020]; 1 Bish. Cr. Law, §§ 828, 249, 133; Bish. St. Crimes, §§ 189–196; Webst. Dict. "Take"; U. S. v. Mulvany [Case No. 15,833]; U. S. v. Parsons [Id. 16,000].

(2) The words of the statute, "with a design, to obstruct the correspondence," do not apply to the non-delivery of a letter, but only to a case where there is a design to prevent an answer or other correspondence. The word "correspondence" is derived from "con" and "respondere," meaning an answer to a letter sent—a response. The statute is to be strictly construed. Bish. St. Crimes, §§ 189–196; 1 Bish. Cr. Law (3d Ed.) § 249.

(3) If Nutt knew the contents of the letter before he received it, he can not be convicted of prying into the secrets or business contained in it.

(4) If Nutt was a partner in the firm of Nutt Brothers, and interested in the letter, he can not be guilty of prying into the business of "another." The statute was designed to protect the privacy of correspondence against the inspection of parties having no interest in it. This is the necessary meaning of the words "the business of another."

(5) If the defendant in good faith believed that the letter became of no value to Baughman, and in fact was of no value, because Wm. A. Nutt purchased the wheat for Nutt Brothers at $1.52 a bushel, when the letter only offered $1.50, and for that reason failed to deliver it, this is a complete defense.

He made and argued other propositions of law which were not controverted.

Wm. B. Neff, for defendant.

The writer of the letter had a right to control it. If defendant received it from the post-master on the written order for it, this is a defense. U. S. v. Tanner [Case No. 16,430].

J. C. Lee, U. S. Dist. Atty., and Edward S. Meyer, Asst. U. S. Dist. Atty.

WELKER, District Judge (charging jury). The defendant, William A. Nutt, is charged in the indictment with three offenses against the post-office laws. The first count charges him with having at a certain time taken out of the post-office at Quincy, Ohio, a letter addressed to Isaac Baughman, with the design to obstruct the correspondence of said Isaac Baughman. The second charges him with

having taken out of the same post-office, the same letter, with the design to pry into the business of said Baughman. The third count charges him with having taken the same letter out of the post-office, with the design to pry into the secrets of said Baughman. In the consideration of this case, you may regard the last two counts as being substantially one charge. To all of these charges the defendant has interposed a plea of not guilty. You are to start off in the investigation of these charges against the defendant with the presumption that the law, as a shield, throws around every man charged with a crime that he is innocent of the alleged charges; and to hold the government to strict proof of all the material allegations, and the charges of crime against the defendant. You are to hold the government in the proof, to the establishment of all the facts necessary to constitute a violation of the statute; not by a mere preponderance of proof, but to establish each one of the necessary facts to your satisfaction beyond a reasonable doubt; not a captious, but a fair and well founded doubt that may arise in relation to any one of the necessary facts. Holding the government to this proof, you will proceed to the investigation of this case in the light of the evidence you have had presented to you. In the first place, it is necessary that the government establish the fact of the taking of the letter out of the post-office at the place named. As to this fact, a question of law has been raised in regard to the nature of the taking, upon which it is important I should instruct you. It is not disputed that the defendant did get the letter directed to Baughman out of the post-office by the consent of the post-master, and without the consent or direction of said Baughman. You may regard that as a conceded fact. But it is claimed by the defendant, that if the letter was obtained from the post-office with the assent and consent of the post-master, it was not a taking under the provisions of the statute making it an offense. I direct you on that subject that the taking of a letter out of the post-office in which it was regularly received, by a person other than the person to whom it was addressed, and without his consent or direction, but with the consent of the post-master, who voluntarily delivers it to him to be delivered to the proper person, if taken or received by such person with the design, at the time, to obstruct the correspondence or pry into the business or secrets of the person to whom it is addressed, is a violation of the statute. The consent of the post-master in delivering the letter to the defendant does not screen him from violation of the statute, provided he took it with the design specified in the statute; or, in other words, it is not a defense to show that the post-master voluntarily delivered the letter to the defendant. It is not necessary to show that the letter was unlawfully or clandestinely taken from the office by the defendant, to make the taking, with the design specified, a

violation of the statute. The principal question in this case is as to the design of the defendant at the time he took the letter out of the post-office. The evidence must satisfy you of this design and purpose at the time the letter was taken out of the post-office; for if an offense or crime was committed it must have been such at the time the defendant obtained the letter, for it consists in taking it out with the design to obstruct correspondence, or pry into the business or secrets of Baughman. Look into the evidence there, for the purpose of ascertaining whether the government has established, beyond a reasonable doubt that the defendant at the time he took the letter out of the office, did so with the design named in the statute. Evidence was presented to you showing a wheat transaction between Baughman and the defendant. You are not to try the question of fraud that may have been practiced on one side or the other in that transaction. It was allowed to go to you for the purpose of throwing light upon the design and intent of the defendant at the time he took the letter, and is to be regarded by you in no other light. It does not matter to you whether the defendant bought the wheat at a lower figure than he ought to have purchased it at, or whether he paid more than its value. Evidence has been introduced on behalf of the defendant for the purpose of showing that the proposition in the letter was for one dollar and fifty cents per bushel, and that the defendant, when he went to negotiate for the purchase of the wheat, had offered one dollar and fifty cents. Evidence has also been introduced tending to show that before the defendant went to the post-office he had been informed by his brother, the writer of the letter, what the proposition was, and what was contained in the letter. If it shall appear to your satisfaction that when the letter was taken out of the office by the defendant he knew the contents, and the proposition contained in it, it can hardly be said that he took it out with the design and intent to pry into the business or secrets, which he knew before he got the letter. Look at that branch of the case, with the evidence before you, and it is for you to say whether you are satisfied, beyond a reasonable doubt, that he took the letter with the design to pry into the business or secrets of Baughman.

The main charge in the case is the allegation that the letter was taken out of the office with the design and intent to obstruct correspondence. What is obstructing correspondence? Is it to cut it off entirely, or is it to retard or delay it? If the evidence shows that at the time the letter was received by the defendant it was his intention not to deliver it, or to delay the correspondence by keeping it in his possession for a time after it ought to have been delivered, that is a violation of the statute. It is not necessary to show that the letter was destroyed absolutely, but it is sufficient if the evidence shows obstruction or delay in the corre-

spondence. How is this intent and design to be made out? Intent in the commission of a crime must necessarily be established by a variety of facts, and gathered from circumstances. Men do not usually declare, when they perform an act, what their intent and purpose is in doing it. An intent is properly to be made out by circumstantial proof by showing what took place at the time or after the delivery of the letter to the defendant. Therefore I have allowed to go in evidence for your consideration all of the circumstances surrounding this whole transaction, to enable you to determine the intent of the taking of the letter. These various circumstances tending to show that are to be considered by you to enable you to determine the purpose, and the weight and effect of them is with you to settle. It is claimed on behalf of the defendant that the first opportunity he had he offered the letter to Baughman, and it was refused by him, because it was opened. I direct you that if at any time Baughman had been offered the letter, and refused to take it because it had been opened, you may regard that as a delivery to him, and it was his duty to have taken it. It is claimed by the defendant that such offer was made on the day of the sale of the wheat, the 11th of April, and, on the other side, that it was not done until the 13th of April. You will determine when that offer was made. In relation to the question of design and intent I direct you that if a person take a letter out of the post-office addressed to another, without the authority or direction of the person to whom it was addressed, with the declared purpose of delivering, and does not deliver it the first opportunity he has, the law raises the inference by that fact, that when he got the letter he did not intend to so deliver it. But that inference, like every other presumption of the law, may be overthrown by showing facts and circumstances that occurred between the parties afterward, showing what was the original design and purpose. The mere taking the letter out of the office is no crime unless done with the design described in the statute. Does the evidence, as a whole, satisfy you that the defendant designed and intended originally to obstruct correspondence? It does not matter whether the defendant knew it was a violation of the law or not. If he performed an act which is a violation of the law, you are to hold him to such knowledge. If it shall appear to your satisfaction, in the light of all the proof, that the defendant did intend when he took the letter out of the post-office, to deliver it, and that anything occurred between Baughman and the defendant afterward in their subsequent transactions that led the defendant to conclude not to deliver it, that change of opinion and purpose, after such receipt of the letter, does not constitute a violation of the statute. But it is for the defendant to show a reason for such change, such as will satisfy you that he

did not intend originally to obstruct or delay the correspondence.

Another question was raised by counsel for the defendant. The evidence shows that the defendant's brother, the writer of the letter, gave to the defendant an order to the post-master, directing him to hand over to the defendant the letter directed to Baughman, which he took with him and presented to the post-master at the time he received the letter, which the post-master refused to recognize as authority for its delivery. It is claimed that the defendant had a right, under that order, to get possession of the letter. I direct you on that subject that where a letter is placed in the hands of the officer charged with the duty of mailing, and has been mailed and passed the mailing office into the custody of the post-office department for delivery, the writer loses control of it, and the alleged writer has no right to take it out of such custody, or prevent or delay such delivery. It is no defense in this case that the letter related in part to the business of the defendant, or business in which he was interested with Baughman. Nor is it any defense that the defendant, in good faith, believed at the time he took it out of the post-office that it was of no value to Baughman. Evidence has been given to you showing the general good character of the defendant. In all criminal prosecutions, and also for offenses, it is always competent for the defendant to give in evidence his general good character in relation to the character of the charge against him—in this case, for honesty and integrity. If there is any fair doubt in your minds as to the original criminal intent of defendant in relation to this letter, and the defendant has established in the proof a good character in relation to honesty and integrity among his neighbors and acquaintances, such doubt ought to be solved in favor of the defendant, and entitle him to an acquittal.

I am asked by counsel for defendant to say to you that a defendant can not be guilty of a crime unless he does an unlawful act and with a criminal intent. I have already said that to you substantially, and now say to you that it is a correct general proposition.

I am also asked to say to you that if it appear from the evidence that the failure to deliver the letter was through the forgetfulness and mere neglect of the defendant, that he did not violate the statute. I direct you that if through mere carelessness and neglect the defendant did not deliver the letter, and that carelessness and neglect is explained to your satisfaction, in the circumstances of the case, that would exonerate him from the criminal intent, for it must appear affirmatively that the design to obstruct correspondence was in the mind of the defendant at the time the letter was procured from the office. Take the case, gentlemen, look into all the evidence, and, in the light of all the proof and under the rules of law I have given you,

say whether the defendant is guilty or not guilty of the charges alleged against him in the indictment.

The jury returned a verdict of not guilty.